UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 16-80964-CV-Middlebrooks/Brannon

CROCS, INC.,

    Plaintiff,

v.

CVS HEALTH CORPORATION, and
CVS PHARMACY, INC.,

    Defendants.

_____/

## ORDER DENYING DEFENDANTS' MOTION TO STAY OR TRANSFER

THIS CAUSE is before the Court on Defendants CVS Health Corporation and CVS Pharmacy, Inc.'s (collectively, "CVS") Motion to Stay and/or Transfer and Memorandum of Points and Authorities in Support ("Motion"), filed August 9, 2016. (DE 28). On August 26, 2016, Plaintiff Crocs, Inc. ("Crocs") filed its Opposition in Part to CVS Health Corporation and CVS Pharmacy, Inc.'s Motion to Stay and/or Transfer ("Opposition"). (DE 39). Defendants filed a Reply on September 6, 2016 ("Reply"). (DE 42). For the reasons stated below, the Motion to Stay or Transfer is denied.

## BACKGROUND

For over ten years, Crocs has been engaged in patent litigation arising from its patented footwear. In 2006, Crocs filed suit in the District of Colorado against Double Diamond Distribution, Ltd. ("Double Diamond") and several other competitors for manufacturing footwear that allegedly infringes Crocs' '789 and '858 patents (the "Colorado Action"). *See Crocs, Inc. v. Effervescent, Inc. et al.*, 06-cv-00605-PAB-KMT (D. Colo. filed Apr. 3, 2006). Double Diamond is the Canadian affiliate of U.S.A. Dawgs, Inc. ("Dawgs"). From 2006 to

1

2012, the Colorado Action was stayed in favor of International Trade Commission ("ITC") proceedings. When the stay was lifted in mid-2012, Crocs added Dawgs as a defendant in the Colorado Action. Crocs also brought a separate action against CVS in the District of Colorado for infringing the '789 patent by selling Dawgs footwear in Florida – one of the same sales that is the subject of the instant action. *See Crocs, Inc. v. CVS Caremark Corporation*, No. 1:12-cv-02096-PAB (D. Colo. filed Aug. 8, 2012). The CVS suit was consolidated with the Colorado Action.

On Dawgs' motion, the Colorado Action was stayed pending the United States Patent and Trademarks Office's ("PTO") reexamination of the '789 patent. On April 21, 2016, the stay was lifted at Dawgs' request, even though reexamination proceedings were still ongoing.

When the stay was lifted, CVS filed a motion to dismiss for lack of personal jurisdiction. In response, Crocs proposed to dismiss its claims against CVS without prejudice if Dawgs and CVS stipulated that (1) all footwear sold by Dawgs to CVS was sold within the United States, (2) Dawgs would retain samples of each shoe sold to CVS, (3) Dawgs would retain documents showing its volume of sales to CVS and its revenue from sales, and (4) CVS would not rely on its status as a non-party to the Colorado Action as a basis to object to any discovery that Crocs served on it. CVS and Dawgs refused Crocs' proposal.

Crocs, therefore, voluntarily dismissed CVS from the Colorado Action and instead filed suit against CVS in this action on June 10, 2016. (DE 1). Crocs alleges that CVS sold Dawgs footwear that infringes Crocs' '789 and '465 patents at a CVS location in Florida in 2011. Dawgs is defending and indemnifying CVS in this lawsuit.

On June 28, 2016, Crocs moved to amend its complaint in the Colorado Action to add allegations that Dawgs manufactured footwear that infringed the '465 patent. However, Dawgs

2

opposed Crocs' motion to amend, and the '465 patent is not part of the Colorado Action.[1] Meanwhile, on July 18, 2016, Dawgs sued for declaratory judgement of non-infringement and invalidity of the '465 patent in the District of Nevada in *U.S.A. Dawgs, Inc. and Double Diamond Distribution, Ltd. v. Crocs, Inc.*, No 2:16-cv-1694 (D. Nev. Filed Jul. 18, 2016) (the "Nevada Action").

CVS now requests a stay of this action until a resolution is reached in the Colorado and Nevada Actions. (DE 28 at 9). In the alternative, CVS asks the Court to transfer this action to the District of Rhode Island, where CVS Pharmacy, Inc. has its headquarters. (DE 28 at 11). Crocs does not oppose CVS's motion to stay this action but does oppose transfer in the event that the Court denies the stay.

### A. MOTION TO STAY

### STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). If there is a possibility that staying a matter may damage someone, "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward . . . ." *Id.* at 255. A stay should not be granted unless the other proceedings will conclude within a reasonable time. *See Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

---

[1] As of September 6, 2016, according to CVS's Reply, the court had not yet ruled on Crocs' motion to amend the complaint.

# DISCUSSION

*1. Stay Pending the Resolution of the Nevada and Colorado Actions*

CVS argues that the customer-suit exception favors a stay until the Colorado and Nevada Actions are resolved so that Crocs and Dawgs can litigate the validity of the '789 and '465 patents. (DE 28 at 8). Crocs agrees that it will be more efficient to litigate the issue of infringement in the Colorado and Nevada Actions but disputes the applicability of the customer-suit exception.

The customer-suit exception reverses the traditional first-to-file rule for determining which suit to stay if there are multiple actions pending. *See In re Nintendo of America, Inc.*, 756 F.3d 1363, 1365 (Fed. Cir. 2014); *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989). "When a patent owner files an infringement suit against a manufacturer's customer and the manufacturer then files an action of noninfringement or patent invalidity, the suit by the manufacturer generally takes precedence . . . to avoid, if possible, imposing the burdens of trial on the customer, for it is the manufacturer who is generally the 'true defendant' in the dispute." *In re Nintendo of America, Inc.*, 756 F.3d at 1365. However, the customer-suit exception does not apply when the manufacturer suit cannot resolve all of the issues in the customer suit. *See Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989). In *Kahn*, the Federal Circuit refused to apply the customer-suit exception where the manufacturer suit would not resolve all infringement issues and where the customer had not agreed to be bound by the manufacturer's action such that the remedy would still have to be litigated against the customer. *Id.* at 1082.

Here, the customer-suit exception does not justify a stay because Crocs' pending suits with the manufacturer, Dawgs, would not resolve all the issues in this suit against the customer,

4

CVS. It is true that this Court could wait to see whether the Colorado and Nevada Actions determine that Dawgs footwear infringes the '465 and '789 patents. However, the remedies of damages and an injunction against CVS are not available in the Colorado and Nevada Actions because CVS is not a party to those actions, having refused to consent to personal jurisdiction in Colorado. Neither has CVS consented to be bound by the Colorado and Nevada Actions.[2] Given the history of the litigation involving Crocs, Dawgs, and CVS, the Court is skeptical that either CVS or Crocs would submit to an unfavorable ruling on infringement rendered in Colorado or Nevada.

The Court is also concerned with CVS's gamesmanship in asserting the customer-suit exception. In 2012, Crocs' suits against Dawgs and CVS were joined in the Colorado Action for the ease of litigating both actions in one suit. CVS refused to consent to personal jurisdiction in Colorado, or even to agree to Crocs' proposal to drop the suit against CVS in exchange for ensuring CVS's cooperation with discovery related to damages arising from CVS sales of Dawgs footwear. Had CVS remained in the Colorado Action, the customer-suit exception would not have applied there. *See, e.g., Privasys, Inc. v. Visa Int'l*, No. C 07-03257 SI, 2007 WL 3461761, at *3 (N.D. Cal. Nov. 14, 2007) ("Where, as here, plaintiff has brought suit against both the supplier and its customers in the same suit and in the same district, the 'customer suit' exception does not apply."); *Heinz Kettler GMBH & Co. v. Indian Indus., Inc.*, 575 F. Supp. 2d 728, 730 (E.D. Va. 2008) (refusing to apply customer-suit exception to stay the action against the customer where the manufacturer and customer were both parties to the same action); *Alloc, Inc., v. Unilin Decor N.V.*, No. 02-C-1266, 03-C-342, 04-C-121, 2005 WL 3448060, at *3 (E.D. Wis.

---

[2] Although CVS states in its Motion (DE 28 at 9), that "[e]ither of those lawsuits will resolve every single issue of patent infringement brought here," the Court interprets this statement as argument and not CVS's consent to be bound by the result of those lawsuits.

Dec. 15, 2005) (where manufacturer and customer "are defending claims of infringement in the same consolidated suit in the same jurisdiction . . . there is no issue of which jurisdiction should be granted priority and therefore the exception to the typical priority rule is inapposite"). After refusing to be part of the Colorado Action, CVS cannot seek the protection of the customer-suit exception simply to avoid litigation.

Additionally, it is unlikely that the Colorado or Nevada Actions will conclude within a reasonable period of time. The Colorado Action has been ongoing since 2006 with multiple stays. The Court is concerned that this Motion represents another delay tactic by the Parties and that if the stay is granted, "this case will simply languish on the docket without any future resolution." *See Baratta v. Homeland Housewares, LLC*, No. 05-60187-CIV, 2008 WL 10989539, at *2 (S.D. Fla. Oct. 28, 2008).

Accordingly, to encourage the Parties to move forward with this litigation, which cannot be fully resolved in other forums, and to discourage gamesmanship, the Court denies CVS's motion to stay this action pending the resolution of the Colorado and Nevada Actions.

2. *Stay Pending the PTO's Reexamination of the '789 Patent*

CVS argues that the Court should stay this action for efficiency during the PTO's reexamination of the '789 patent. (DE 28 at 9). Crocs counters that it "does not believe that a stay in favor of any proceedings at the Patent Office is appropriate, where the manufacturer here expressly argued that the Patent Office proceedings should not stay an underlying question of infringement." (DE 39 at 4 n.3).

"Courts are not required to stay judicial proceedings pending re-examination of a patent." *Nanometrics, Inc. v. Nova Measuring Instruments, Ltd.*, No. C 06-2252, 2007 WL 627920, at *1 (N.D. Cal. Feb. 26, 2007). In deciding whether to stay litigation during a PTO reexamination,

6

courts generally consider three factors: "1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; 2) whether a stay will simplify the issues in question and trial of the case; and 3) whether discovery is complete and whether a trial date has been set." *Baratta v. Homeland Housewares, LLC*, No. 05-60187-CIV, 2008 WL 10989539, at *2 (S.D. Fla. Oct. 28, 2008) (citing *Xerox Corp. v. 3Com Corp.*, 69 F. Supp. 2d 404, 406 (W.D.N.Y. 1999)). "No one factor is controlling, and courts should consider 'the totality of the circumstances' in deciding whether to grant a stay." *Milos Misha Subotincic v. 1274274 Ontario Inc.*, No. SACV 10-01946 AG, 2013 WL 3964994, at *16 (C.D. Cal. Apr. 9, 2013) (internal citations omitted).[3]

The first and third factors favor a stay. This case is in its initial stages and there is no undue prejudice to Crocs as it does not oppose a stay.

The second factor strongly weighs against staying the case. A stay pending the PTO's reexamination of the '789 patent would do little to simplify the litigation because the '465 patent would remain at issue. *See, e.g., Milos Misha Subotincic*, 2013 WL 3964994, at *16–17 (finding that the simplification of issues factor weighs against a stay where the Patent Office was not reexamining all asserted patent claims); *Nat'l Prods., Inc. v. Gamber-Johnson LLC*, No. 2:12-CV-00840, 2012 WL 3527938, at *3 (W.D. Wash. Aug. 14, 2012) (denying motion for stay in view of reexamination where Patent Office was reexamining 33 of 35 patent claims because the purpose of granting a stay was frustrated as the parties would incur many of the same costs litigating the two claims not undergoing reexamination). Therefore, even if the PTO's

---

[3] The standard for whether to grant a stay pending a PTO reexamination has been fleshed out in the district courts. The reason for the absence of guidance from the Federal Circuit is that an order staying district court proceedings pending reexamination by the PTO is not appealable unless it "effectively disposes of the district court action," a narrow exception. *See Slip Track Sys., Inc. v. Metal Lite, Inc.*, 159 F.3d 1337, 1340 (Fed. Cir. 1998).

reexamination resolves the issues relating to the '789 patent, the Court will still have to conduct all phases of a patent trial on the '465 patent, and the Parties will be subject to the same burdens of discovery.

Based on the totality of the circumstances, the Court denies CVS's motion to stay this action pending the PTO's reexamination of the '465 patent.

### B. MOTION TO TRANSFER

### STANDARD

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." *Id.* Section 1404 authorizes courts to transfer a case in order to avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). The burden is on the movant to establish that the suggested forum is more convenient. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). To determine whether transfer is appropriate, courts embark on a two-prong inquiry. First, the new venue must be one in which the action could originally have been brought by the plaintiffs. 28 U.S.C. § 1404(a). Second, courts are to conduct a balancing test, weighing several private and public interest factors to determine if transfer is justified. *See Am. Dredging Co. v. Miller*, 510 U.S. 443 (1994).

Private factors to be weighed include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to

the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* at 448. Public interest factors that should be considered include:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness in burdening citizens in an unrelated forum with jury duty.

*Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The plaintiff's choice of venue generally should not be disturbed "unless it is clearly outweighed by other considerations." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (citation omitted).

## DISCUSSION

CVS argues that the District of Rhode Island is a more convenient forum because the decision to carry Dawgs footwear was made in Rhode Island at CVS's headquarters, and therefore all of its witnesses, documents, and other sources of proof "are expected to be found in Rhode Island." (DE 28 at 12). Crocs responds that CVS has provided no factual support for its contention that the witnesses and sources of proof are actually located in Rhode Island. Crocs also argues that Rhode Island has no local interest in an act of infringement that occurred in the Southern District of Florida.

*1. Original Venue in the District of Rhode Island*

The first consideration under § 1404 is whether this case could originally have been brought in the District of Rhode Island. Section 1400(b) provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of

9

business." 28 U.S.C. § 1400(b). Defendant CVS Health Corporation has its principal place of business in Rhode Island and therefore resides in Rhode Island. (DE 28-1, ¶ 2). Defendant CVS Pharmacy, Inc. is incorporated in Rhode Island and therefore resides in Rhode Island. (DE 28 at 11). Accordingly, the first inquiry of the transfer analysis is satisfied. *See* 28 U.S.C. § 1404(a).[4]

2. *Private Factors*

The convenience to witnesses is a primary factor in determining whether transfer is appropriate. *See In re Biosearch Techns., Inc.*, 452 F. App'x 986, 989 (Fed. Cir. 2011) (quoting *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). "The party seeking the transfer must support its motion by clearly specifying the key witnesses to be called and particularly stating the significance of their testimony." *Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1362 (S.D. Fla. 2001). Despite prompting by the Court and Crocs, CVS has not specified a single key witness who is in Rhode Island. Specifically, in the August 15, 2016 Scheduling Conference Hearing, CVS repeatedly avoided the Court's questions as to which witnesses are in Rhode Island. (DE 38 at 11-12). And although Crocs raises CVS's lack of specificity in its Response, CVS's Reply also does not identify which witnesses are in Rhode Island. Thus, CVS has not met its burden of showing that Rhode Island is a more convenient forum for the witnesses.

The Court also considers the location where the evidence and sources of proof are located in determining whether transfer is appropriate. Besides asserting that the decision to carry the accused product was made in Rhode Island, CVS has not indicated what evidence and sources of

---

[4] In a single sentence, CVS suggests venue is improper in the Southern District of Florida under 28 U.S.C. § 1400(b) because neither Defendant has its principal place of business in this District. CVS, however, has cited no cases interpreting "a regular and established place of business" to mean "principle place of business."

10

proof that are relevant to the alleged infringing sales in Florida are located in Rhode Island. In the August 15, 2016 Scheduling Conference Hearing, the Court asked CVS the advantage of Rhode Island, and CVS stated vaguely that "[a]ny witness, any evidence related to the decisions to carry USA DAWG shoes . . . would be found in Rhode Island." (DE 38 at 11). Without identifying any specific evidence in Rhode Island, CVS has not shown that Rhode Island is a more convenient forum for evidence and sources of proof.

Thus, CVS has not met its burden of showing that Rhode Island is a more convenient forum for the witnesses, evidence, and sources of proof or that any other private factors favor the District of Rhode Island.

*3. Public Factors*

CVS has made no showing that Rhode Island is the more convenient forum as to any of the public interest factors. There is no conflict of law issue in this case that favors one of the jurisdictions. There is no suggestion that courts in the Southern District of Florida are particularly congested. The application of foreign law does not favor either forum because both this District and the District of Rhode Island are equally competent to address federal patent law. Finally, CVS has not shown that Rhode Island has any local interest in the sale of infringing products in the Southern District of Florida. Thus, no public interest factors favor Rhode Island.

Because the private and public factors do not favor transfer to the District of Rhode Island, the Court denies CVS's motion to transfer venue.[5]

**ORDERED AND ADJUDGED** that CVS's Motion (DE 28) is **DENIED.**

---

[5] In passing, CVS suggests that the Districts of Colorado and Nevada might also be more convenient forums. However, CVS refused to consent to personal jurisdiction in the District of Colorado and has not clearly indicated that it is moving to transfer to the District of Nevada, or appropriately briefed the matter.

11

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 16 day of September, 2016.

                                      DONALD M. MIDDLEBROOKS
                                      UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record